UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRILOGY HEALTH CARE, LLC, | : |
| Plaintiff, | : Civil Action No. 13-550 (SRC) |
| v. | : |
| | : **OPINION & ORDER** |
| MEDCO HEALTH SOLUTIONS, INC., | : |
| Defendant. | : |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion by Plaintiff Trilogy Health Care, LLC ("Trilogy") for a preliminary injunction. For the reasons stated below, the motion will be denied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). While all four elements are essential, the Third Circuit has held that a court may not grant injunctive relief, "regardless of what the equities seem to require," unless the movant carries its burden of establishing both a likelihood of success and irreparable harm. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir.2000); see also Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir.1990) (holding same); In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982) (holding that "a failure to show likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."). "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" Instant Air

Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.1989) (quoting Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir.1988)).

This case arises from a dispute between Plaintiff Trilogy, a pharmacy, and Defendant Medco Health Solutions, Inc. ("Medco"), a pharmacy benefits manager. On April 9, 2013, Medco terminated Trilogy's membership in Medco's pharmacy network, alleging contractual violations and asserting a termination for cause. Trilogy has moved for a preliminary injunction requiring Medco to reinstate Trilogy to its network, retroactive to April 9, 2013.

There is no dispute that the relationship between the parties is the subject of a contract (the "Agreement"), which the parties executed in December of 2009. (Abou Nader Decl. Ex. 1.) The Agreement expressly incorporates the Pharmacy Services Manual. (Id.) Section 6.11 of the Pharmacy Services Manual contains this termination provision: "Medco may at any time terminate Provider's Agreement with Medco without cause upon 30 days' prior written notice to Provider and with cause immediately." (Abou Nader Decl. Ex. 2.) These terms appear as well in the "Termination" section of the "Network Provider Manual." (Abou Nader Decl. Ex. 3.) Because Trilogy is a Missouri entity, these terms appear to have been modified by the "Missouri Requirements" section of the Pharmacy Services Manual, which states in § 4 that Medco may terminate without cause upon 60 days' written notice. (Abou Nader Decl. Ex. 2.)

There is no dispute about the validity of the relevant termination provisions, and they sharply limit Trilogy's available remedies. Under the best case scenario, Trilogy would be entitled to no more than 60 additional days of membership in Medco's network. Medco has declared in no uncertain terms that "Medco's relationship with Trilogy is over." (Def.'s Opp. Br. 1.) There is no reason to believe that the previously existing status quo could be restored by the

grant of an injunction. Even if Trilogy could demonstrate that it is likely to succeed on the merits, and show that it is entitled to injunctive relief, the contract limits the available injunctive remedy to 60 additional days of membership in the network. On the present record, this Court doubts that this is a sensible remedy.

The largest defect in Trilogy's application for injunctive relief is its failure to recognize that it cannot be contractually entitled to network membership lasting beyond 60 days. Rather, Trilogy seeks an injunction requiring Medco to restore its provider status retroactive to April 9, 2013 – at this date, a period of over 150 days, when it can only be entitled to 60 at best. Trilogy has given this Court nothing from which this Court could find – setting aside the reasonable likelihood of success standard for a moment – even a possibility that it is contractually entitled to what it has asked for. Trilogy has asked for a particular injunctive remedy to which it has no entitlement under the contract. It is from this starting point that this Court considers Trilogy's application.

Trilogy has not persuaded this Court that it is likely to succeed on the merits. Medco contends that it terminated Trilogy's provider status for cause, and that it was entitled to do so under the contract. Medco contends that it terminated Trilogy for these contractual violations: 1) "Trilogy obtained grossly inflated reimbursements based on fictitious prices for products" (Def.'s Opp. Br. 2); 2) "Trilogy has inflated its Usual and Customary pricing" (Def.'s Opp. Br. 3); and 3) "Trilogy had been waiving co-pays for individual plan members served by Medco" (Def's Opp. Br. 4.) These are complex and hotly contested factual disputes, and this Court has no way at this juncture to predict which side is likely to prevail at trial. The Court observes, however, that, as to the waived co-payments issue, Medco has offered what appears to be substantial evidence.

The declaration of Linda Ragsdale appears to be compelling evidence: she stated that she worked as Trilogy's "in-house accountant" during 2011, and that Trilogy offered patients an auto-refill program in which co-payments were waived. (Seelbach Decl. Ex. M.) Moreover, Ragsdale stated that owner David Rieck had instructed her to generate financial statements that concealed this fact. (Id. at ¶ 7.) Trilogy, in reply, makes procedural objections directed to the admissibility of Ragsdale's potential testimony. Trilogy's argument that Ragsdale's declaration is inadmissible hearsay is patently incorrect. The declaration is based on personal knowledge, and clearly her testimony would be admissible at a hearing or trial. This evidence alone is sufficient to raise substantial doubt about the likelihood that Plaintiff will succeed on the merits. If Medco were able to prove at trial that what Ragsdale stated is true, it could well justify the termination of Trilogy for cause. The bottom line is that there appear to be genuine factual questions requiring trial, and it is not possible at this juncture for this Court to conclude that Trilogy has a reasonable likelihood of success at trial.

In its reply brief, Trilogy raised the argument that Medco's discretion to terminate Trilogy under the contract is limited by "Any Willing Provider" laws in various states in which Trilogy is licensed. The Court asked the parties to submit supplemental briefing on this issue. Trilogy has failed to persuade this Court that "Any Willing Provider" laws impact this case. As Medco points out, Trilogy argues only in very general terms and has failed to identify any specific state's law that it contends materially impacts these issues. Trilogy is a Missouri limited liability company, and Missouri has no "Any Willing Provider" law. The Provider Agreement contains a choice of law provision which specifies that New Jersey's law governs the contract. (Abou Nader Decl. Ex. 1.) Trilogy has not identified any applicable "Any Willing Provider" law, nor

4

offered even a colorable argument that, given the choice of law provision in the contract, a particular "Any Willing Provider" statute applies or gives rise to a private right of action against a pharmacy benefits manager, which Medco is, rather than an insurer. Trilogy's "Any Willing Provider" argument does not persuade this Court that it is reasonably likely to succeed on the merits.

Next, this Court examines whether Trilogy has demonstrated that it is likely to suffer irreparable harm in the absence of preliminary relief, and finds that Trilogy has not done so. One of the main problems for Trilogy is that its brief fails to clearly show that the limited injunctive remedy to which it could be entitled will protect it from irreparable harm that has not already occurred. Moreover, the brief confuses injuries already suffered with future injuries to be avoided.

David Rieck, owner of Trilogy, declared that, since Medco's termination of Trilogy, he has laid off twelve employees and that, if the preliminary injunction does not issue, he will be unable to pay his remaining workers and "the business will be destroyed." (Rieck Decl. ¶¶ 5, 7.) Rieck also declared:

> Since Trilogy's termination . . . , 295 physicians have completely stopped consulting with, and referring their patients to Trilogy. Moreover, this number does not take into account the 240 physicians that have substantially cutback (i.e., by a factor of anywhere from 10% to 90% of their average monthly prescription volume) on consulting . . . It is highly unlikely that Trilogy shall ever be able to regain these physician relationships once they are severed.

(Id. at ¶ 8.) It is clear that, at this point, Trilogy's business has already been gravely crippled. Plaintiff has given no reason to believe that reinstatement for 60 days would be of greater benefit to that business than an award of money damages for 60 days of lost profits.

Under Third Circuit law, the party seeking preliminary injunctive relief must demonstrate irreparable injury in the absence of injunctive relief. "The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." Adams, 204 F.3d at 484-485 (citation omitted). Furthermore:

> Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury. The requisite feared injury or harm must be irreparable -- not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it. We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.
>
> When the claim is based on a breach of contract, irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable.

Ecri v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987) (citations omitted).

Plaintiff has failed to demonstrate that the requirements stated in Ecri have been met. This case is fundamentally a breach of contract case. Of the three claims in the Complaint, Count One asserts a claim for breach of contract, and Count Two asserts a claim for breach of the covenant of good faith the law implies in the contract. Since this is a breach of contract case, this Court examines whether either of the two conditions set forth in Ecri have been satisfied. As to the first condition, Plaintiff has not even argued, no less demonstrated, that the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate. Nor has Plaintiff even argued, no less demonstrated, that, because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money

6

damages are impracticable. To the contrary, on this record, money damages seem readily ascertainable and like a better remedy than a forced 60-day restoration of Plaintiff's provider status.

Plaintiff's argument for irreparable harm rests on the assertion that it will be driven out of business if an injunction is not granted. The problem for Plaintiff is that, if this is true, then the failure of the business is inevitable. An injunction requiring a 60-day restoration merely postpones the inevitable for 60 days. Plaintiff has not argued that a mere 60-day restoration will render the business viable for a longer term. This Court does not see how having an additional 60 days as a provider will leave Plaintiff in a materially different position than it is in now – on the brink of business failure.

Plaintiff argues that the "indisputable facts clearly establish that Trilogy will suffer irreparable harm if it is not reinstated into Medco's/ESI's pharmacy networks because it will lose an overwhelming portion of its patients, it will lose its physician relationships, it will be forced to make additional substantial employee layoffs, and its pharmacy practice will be destroyed." (Pl.'s Br. 34-35.) Yet the record indicates that a great deal of this damage has already occurred. The Rieck Declaration states that, since Trilogy lost its provider status, 295 physicians have completely stopped consulting with it, and 240 physicians have substantially cut back on referring their patients to Trilogy. (Rieck Decl. ¶ 8.) That declaration also states that, since Trilogy lost its provider status, it has lost 77% of its gross monthly revenues. (Id. at ¶ 6.)

Plaintiff does not explain how, given that the business has already sustained such substantial damage, a 60-day restoration will change its fortunes and restore it to viability in any ongoing way. Rather, if Trilogy is going to survive as an ongoing pharmacy, it needs to adapt to

7

the new reality and find a way to survive without Medco.

Given that Trilogy has already sustained such damage to its business, and that a 60-day reinstatement would, under a best case scenario, merely kick the challenge of survival down the road for two months, this Court finds that money is likely to compensate it for any injuries better than an injunction. Third Circuit law requires that an injury must be of "a peculiar nature:"

> The claimed injury testified to by Morton is purely economic in nature and thus compensable in money. This Court has recognized that the fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury, we have emphasized, however, that the injury must be of a peculiar nature, so that compensation in money cannot atone for it.

Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987) (citation omitted). Discussing Morton in Adams, the Third Circuit explained that "we concluded that there must be something uniquely threatening about the particular loss of money." Adams, 204 F.3d 475 at 485. Trilogy has not demonstrated that there is something uniquely threatening about the loss of 60 days of Medco's business. The problem for Trilogy, rather, is that the threat it is experiencing is not unique: it will return after the 60 days are done.

Trilogy has failed to persuade this Court either that it is likely to succeed on the merits, or that it is likely to suffer irreparable harm in the absence of preliminary relief. Under Third Circuit law, absent a demonstration of these elements, a preliminary injunction may not issue. This Court thus need not reach the remaining two factors in the four-factor analysis. The motion for a preliminary injunction will be denied.

For these reasons,

**IT IS** on this 10th day of September, 2013 hereby

**ORDERED** that Plaintiff's motion for a preliminary injunction (Docket Entry No. 60) is **DENIED**.

                                                      s/ Stanley R. Chesler
                                          Stanley R. Chesler, U.S.D.J.